United States Court of Appeals for the Ninth Circuit is now in session. Please be seated. Good morning and welcome to the Ninth Circuit. Judge Forrest and I are honored to welcome and thank our colleague Judge Paul Kelly from the Tenth Circuit who is sitting with us today by argument today. The first is United States v. Matthews. The second is Allers v. JPMorgan Chase Bank. Those cases are now officially submitted and we will hear argument in the first case of the day which is United States v. Kilty. So, let's see. Mr. Rowe, is that how you say it? That is, Your Honor. Okay, Mr. Rowe is the appellant's representative and Ms. Palmer is representing the government. So, Mr. Rowe, would you like to proceed, please? I would. Thank you, Your Honor and may it please the court. I'm Gary Rowe from the Office of the Federal Public Defender for Mr. Kilty. I would like to reserve, if I could, three minutes of time for rebuttal and I'll keep my eye on the clock. I would like to focus today first on the sufficiency issue and then turn to the Brady issue and I think that will probably use my time. Turning to the sufficiency issue, the standard that the government had to prove was that Mr. Kilty was subjectively aware of the risk that his parking decision posed. The evidence viewed in the light most favorable to the government does not meet this standard. Instead, the government depends on unreasonable inferences and logical leaps. I want to make, to tick off really, four points that I'll then develop after I do so. The first is, the government presented entirely should have known objective evidence. Second, on the facts of this case, you can't go from objective evidence to subjective conclusions without bootstrapping and logical contradictions. Third, the government resists this conclusion by saying that the risk was obvious, but it wasn't given the conditions of the road. And fourth, there were so many things that Mr. Kilty could have done to show subjective awareness but didn't do and that matters for these purposes. So let me now go back to these points in order. The first is the government presented entirely should have known evidence. Nothing directly shows subjective knowledge of a danger on this special truck bypass road with a check-in, a permanent check-in point sign, an outhouse, and a visible orange barrier saying truck stop here. The government presents the following evidence to suggest that he had the mens rea. All of this is objective. First, he was a professional truck driver. He should have known better. Second, he violated the Wisconsin driving manual, which he was trained in. He parked in the middle of a lane of traffic. He didn't use flashers or flares. He walked around his truck but didn't put reflective triangles down. He pulled down his sunshade and went to sleep in his truck. On these facts, you can't go from this objective evidence to the subjective conclusion you of the case is self-contradictory. The government presented evidence of innocence. And let me give you two pieces of that. First, Mr. Kilty took the trouble to walk around his truck to make sure that it was parked safely but then did not put out triangles. I don't see how that can show that he's not concerned about safety, as opposed to the logical, reasonable inference is that he was concerned about safety and didn't see any unsafe condition. Counsel, was there a shoulder on this particular road? Yes, Your Honor, there is a shoulder. Was he parked on that shoulder or was he parked in an actual lane of traffic? He was parked in the middle of the right lane on this road, not on the shoulder. There's some dispute in the government's evidence about whether the shoulder was a rumble strip and a lot of dirt or enough for a truck to park in. But he was not parked on that, Your Honor. So the first piece is that he walked around and didn't put out triangles. And really, the critical piece of government, the piece de resistance of its case, is that he went to sleep in his truck, pulled down his shade and slept like he didn't have a care in the world. This, again, is evidence of innocence. In other words, if he truly, if he truly intentionally put people at risk, why would he risk his truck? He'd been a truck driver for 20 years. And why would he risk his life doing what he did? Is that your position? That's precisely my position, Your Honor. In effect, he ate his own cooking. He subjected himself to the same risks as other people, which the only logical inference from that is that he didn't think there was a danger, didn't have the subjective knowledge. It's not logically possible for him. Counsel, why couldn't it be that he was as careless about himself as others? Your Honor, because in this case, the government presented no evidence to suggest that. They presented no evidence that he texted a friend and said, Oh, I don't really care. No evidence that he, I mean, there's not direct evidence, sure, that he's suicidal or whatever. That was brought up in the briefing. But there are circumstances here, right? He, he knows that what he's driving, he knows he's in a lane of traffic. He knows that there are people coming behind him. That's the whole point of why he's there is he wants to be first. So he knows people are coming. He knows that he didn't put out any sort of precautions so that he would be assured to be visible by anybody who's coming behind him. No reflectors, no lights, no nothing. And then the record also indicates that he made a conscious choice about that. Like he thought about putting his lights on or doing other things, and he chose not to. So why can't a jury look at all of that and infer that he is just disregarding the risk to others and to himself? Your Honor, first of all, I don't think the record reflects that he deliberated and made a choice. There's one place in the record where on cross-examination, he's asked about whether he chose not to put on his lights and said that, well, they would have drained. But he would, if he were going to do anything. It's a deliberate choice, right? I mean, that shows that he was thinking about it. Based on his training, he knew that that was required. He admits that based on his training, if I'm in a lane of traffic, I have to put out safety measures. And his testimony indicates he thought about that and made the different choice because he didn't want to drain his battery. I don't think that's correct, Your Honor. And the thing that he would have put out if he were concerned about danger are the reflective triangles. If he had put on lights and they burnt out, that would be evidence of consciousness of risk. But he didn't put out those triangles after walking around. It would have been so easy to do so. He took the trouble to walk around, make sure his truck was safe, and then it clearly didn't cross his mind that he was in a dangerous situation or else he would have put out those triangles because it wouldn't have taken any more time than walking around. I want to ask this one other way. I mean, the standard of review that we have to apply is to give all reasonable inference to the government, to the jury's decision here of conviction. So your argument is that he made an assessment that there's no risk. And I think that's his testimony, right? This is a safe place. Why couldn't the jury reasonably look at the facts presented and decide or infer instead that he recognized that there was risk and just concluded it wasn't worth bothering about? Because, Your Honor, first of all, the government's evidence seems to contradict that. The walking around the truck, the not putting out triangles, the going to sleep, and especially because the risk was not obvious. On the facts of this case, he did not stop on Interstate 5 or Interstate 10. He stopped on a special truck bypass road that was confusing. He didn't stop on railroad tracks. There was a barrier. There was a check-in point sign. That, given his lack, plus his lack of safety precautions, is what makes the inference unreasonable. I would like, if I can, because I don't want to run out of time, to turn to the Brady issue. The government's main contention is that the risk was obvious, and so we can infer the requisite subjective mens rea. I just argued that that's not the case. But if the court disagrees with me, the Brady evidence becomes especially important. It would go a long way toward showing the jury that the risk was far from obvious. The standard here, of course, is reasonable probability of the different results. And I want to emphasize, as I noted in footnote four of the reply brief, there is a burden-shifting scheme that this court uses on Brady issues, which is once we present some evidence supporting an inference that the to the government to show that it disclosed all that it had and all that it could have learned. Do I not correctly understand that the evidence to which you make reference was not available to the prosecution at the time of this trial? This came up as a, I think, in a civil trial and was after this trial, was it not? Your Honor, that's true, but I don't think that means it wasn't Brady evidence. For two reasons. Wait a minute, wait a minute, wait a minute. Are you suggesting that if there is evidence that the prosecution doesn't have and doesn't know about, and it was discovered later, if that's not disclosed, even though they don't know about it, that that's a Brady violation? I am. So what's your case? What's your case that says that? I have two. My case is Santiago, Your Honor. That doesn't that doesn't stand for that proposition. Oh, I think it does, Your Honor, because the civil division of the United States Attorney's Office possess that information. And so the civil division is part of the government. Santiago says that the Federal Bureau of Prisons is part of the government because the test is access to the documents. And the prosecutors here knew that the civil division would come across exculpatory information, and they didn't make a phone call, send an email saying, Hey, give us anything exculpatory that you have before our trial. And second, there, the ICA emails contain two pieces of Brady information. The first is the fact that there was a second accident. ICA mentioned it. That is some evidence. Now the burden falls on the government to fulfill its duty to learn that there was a second accident, and the police part of the prosecution team knew about it. That even if you don't believe that the civil division is part of the government and the prosecution team, though, I think Santiago does stand for that proposition. There's no question that the Fort Irwin Police Department and that the Emergency Services Department are part of the prosecution team. This evidence is a powerful and material because it impeaches Michael Bultoff, the Deputy Director of Emergency Services at Fort Irwin, who testified that there were no major accidents on the road. With this evidence that the Fort Irwin Police had, you could impeach him. And the key here is that would permit the unraveling of his testimony that no trucks ever lined up before 6 a.m. at the spot where the accident was, a central issue in the case on which the government closed. I see my time is running short, so I'm going to save the rest for rebuttal unless there are questions. Very well. Thank you. All right. Let's hear from the government. Good morning. May it please the court. Carly Palmer on behalf of the United States. The verdict to be affirmed for three reasons, and I'm going to start with the sufficiency argument since that's what my opponent focused on. To answer Judge Kelly's question, there was a shoulder here. There was evidence from multiple witnesses that it was wide enough for trailer trucks to park on. There was testimony from multiple witnesses that they had seen tractor trailers parked on that shoulder, and there are several exhibits and evidence that show the width of the shoulder. So basically what the defense has done here has attempted to invert or contravene the standard of review for sufficiency claim. This court found in Alarcon Simi that it is the exclusive function of the jury to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts. That's exactly what happened here. That's exactly how this case was argued to the jury. I would encourage your honors to go back and look at the government's closing arguments. You will see that contrary to what's set forth in the appellant's brief, the government argued this as a series of reasonable inferences from proven facts, exactly what the Supreme Court and Farmer said you're allowed to do in these kinds of cases. It's clear that- Counsel, let me just ask you this. This obviously is a very difficult burden for the defense to overcome, but as I looked at this evidence, it seemed to me this clearly is a civil case. I mean, there's clear negligence, no question about it, but I'm struggling with the mens rea requirement here. Isn't your opponent correct that when you have a guy who's driven for 20 years, he's concerned enough about his truck and so on, he went and looked around. He didn't put out the triangles, which of course is negligent, but then he went to sleep in the vehicle. He would be personally at risk. His life would be at risk. Now, was he careless? Yes, but I'm struggling with how the evidence gave the jury what it needed to find the mens rea as it needed in this case. What can you do to help me with this problem? Yes, your honor. So the problem is that the defense counsel is reading those inferences in favor to the defense and not in favor to the government as the standard requires. So first of all, going to sleep in the truck. The defendant was very differently situated than everybody else on the road that night. If you look at the photos, look at around 1130 of the exhibits of the record, you're going to see there's a massive amount of space between where the defendant went to sleep and the armored tank behind him, and then where the bus ended up hitting. So he's more protected than anybody else on the road. And that's reading that evidence in the inference that's most favorable to the government as the standard requires. The fact that he walked around and you're saying that because the cab was in front of the issue, well, the trailer, the truck trailer, that he would have had so little risk that there would no need be no need for him to worry about even if a train hit him from the back. Is that your position? This accident that injured and maimed passengers and killed Mr. Keel, all it did to defendant was wake him up. And you can tell when you look at the pictures that he's completely protected from anything coming up the road behind him by the massive camouflage military tank that he's bringing. So he's in a different position. And what was the actual thought process that he went through that makes him criminally culpable? Negligent, I get. Where's the criminal culpability? So I would point to this court's decision in Pineda Duval that grossly negligent conduct that creates a high but not very high risk of injury to others can support a conviction. So this is a recognition of a high risk and then a purposeful disregard again. And that goes to the second fact, the defendant argued in his favor versus the government. And that's the fact that the defendant walked around his truck to check his parking job. Now, I don't know if your honors are better partners than I am, but I have frequently parked my car, gotten out, looked at my parking job, decided, oh, that's not great, but I have things to do. And so I'm going to leave it and hope it's OK. And that's exactly what the government argued happened here. I can't hear as fast as you're talking. I apologize. Yes, your honor. And the third the third fact that the defense again is asking you to interpret in an inference in favor to the defense rather than the government, as the standard requires, is the sign. The sign said trucks park here 6 a.m. to 8 a.m. Mondays through Fridays. It had the time of the check stop on the sign. And defendant testified at trial that he read that sign when asked if he called the number for the main gate on it. He said, no, why would I? He did, in fact, tell the responding officers that he didn't turn off his taillights or put on his flashers because he didn't want the battery to drain. So that came in in the government's case in chief. And it came in later through the defendant's testimony. He also testified to his motive for doing this. He wanted to be first in line. He wanted to be ready to go. That, again, came into the government's case in chief through the responding officer and again through the defendant's testimony. The defendant didn't have to put on a case, but the defendant did. He put on a very large affirmative case. And by doing that, he put in the jury's, the jury was entitled to evaluate that evidence and indeed have the duty to evaluate that evidence the way it would any other witness. It was instructed properly by the court. It needed to evaluate defendant's testimony the same way it evaluated any other witness. Counsel, let me ask you this. As you well know, the first trial was a mistrial. It was a very close case. What role, if any, should that play in our analysis of whether the defendant in this case had the requisite mens rea? Very little, your honor. In the first trial, there were 10 votes to convict. And I believe, I believe it was 10 to convict and one to acquit. And so because of that, he got the benefit of a trial. During that new trial, the defense put on even more evidence and his main argument at trial was I didn't have the mens rea and I did not have the proximate cause here. It's not my fault. It's Fort Irwin's fault. It's the bus driver's fault. It's anybody's fault but mine. And he put on a massive argument in favor of that case and the jury wasn't persuaded. And I think part of why the jury wasn't persuaded is there were a lot of problems with the affirmative case the defense counsel put up. There were contradictions by their witnesses. You know, the defendant testified and his dispatcher testified. And as this court found in Kenney and in Cordova Barajas, the jury was entitled to conclude that the opposite of defendant's testimony was true. So when he testified, I thought it was a safe place to park. The jury was entitled to walk away from that going I don't believe that man. You know, I believe that he in fact knew there was a risk and for the sake of that's why he's parked in the lane, not in the shoulder. Because if he's parked in the lane. Counsel, I think you could maybe look at this two ways. And I say this also just based on personal experience of being a driver. You could look at this scenario and say there's an assessment that no risk to other people exists. And that seems to be what the defendant's testimony was. I looked at this situation and it's safe, right? Or you could look at this and say there was an assessment made of risk and a determination that the risk is low. It's, you know, a 5% chance something might happen that would be bad. My question is because you think that an assessment of risk, but a determination that it's so, so low, would that meet the standard? If that's what happens here, if that's what the jury concludes, would that meet the standard of mens rea that's required? Do you understand what I'm asking? He wouldn't. It would need to be a high risk that was purposely disregarded. And this jury was instructed on exactly that. And that's the big distinction between this case and the Rodriguez case that defendant sites is there. The jury was never instructed. They needed to find subjective knowledge here. The jury was correctly instructed that they needed to find that defendant saw this risk to life and purposely disregarded it. That's exactly how the government argued the case. And that's what the jury found. And the other cases cited by the defense in his reply are also distinguishable. So Goyal, for example, that's a case with a much higher mens rea, willfulness, knowingness, and it's a crime of omission, which this court has rightly found is harder to prove. Kidd, again, is a case with a higher mens rea. That's knowing. And the best evidence there was omissions and not commissions like we have here. So this case is a gross negligence case. You know, it's fairly rare that we bring involuntary manslaughter cases. But we did because this behavior was as egregious as it was. And viewing the evidence in the light most favorable to the government, reading the inferences, not as the defense would ask you to read them, but the way that the government argued them, that the jury found that there was more than sufficient evidence here. And it's a very high threshold for this this panel to stand and take the place of the jury as fact finder. They were the people in the room. They were the people who heard the witnesses testify. They were the people who were entrusted to make that decision. They made that decision while being correctly instructed on the law. And this court should respect that and not invert the standard in the way that the defense is asking. Let me ask you one other thing that was not raised by your opponent in oral argument. And that has to do with the picture. One picture that showed a massive gash in the chest cavity of the deceased passenger. That, you know, under 403, it's kind of hard to see how that could have been properly introduced and admitted. Because the defendant was willing to stipulate that the defendant had died. And under old chief, I just don't see how you get there. What's the government's argument that that was not potentially very prejudicial to the defendant's case? Yes, your honor. So first, the government, you know, would turn back to the language of old chief itself, which is that the defendant doesn't get to step away relevant probative evidence by just agreeing to it and deprive the government of, you know, going through a narrative. But remember that also, you can't deprive the government of an ability to prove something that's essential to its case. But you don't have that here. Everything a government needed was stipulated to the picture did nothing but to show some horrible, terrible wounds that could have done nothing but inflame the jury. What element of the government's case did you, was the picture required to prove basically? So it was required to prove that somebody died. And I would point the court to the Brady case. It was or was not? It was required to prove that somebody died. But he stipulated that. He was willing to stipulate that. He did. And I would just point the court to the Brady case and the Bowers case where the courts have said that's not enough. But this court's easiest path to not prejudicial to defend it. And I do believe that that's something that can be proven. And that's how do you prove that that photo was not prejudicial to the defendant? Because the way in which it was shown mitigated any unfair prejudice. It was briefly shown and briefly discussed. It was an element that needed to be proven and a box that needed to be checked. The best place to look for that is the government's closing and rebuttal. You'll see the government never discusses that exhibit, never shows that exhibit. The only thing it discusses about the injuries to the decedent is the fact that the person died because of the crash. Instead, it focused on the gross negligence, Mandrea, and the substantial participation approximate cost. Did the picture go into the jury room? It did. But your honor, the Ninth Circuit has found that it is within a court's discretion to admit the evidence in a careful and judicious manner. And this is similar to the Chondia case. There there were video clips glorifying 9-11 attacks, but there was no prejudice because it took up only three minutes during the nearly five days the government spent on its case in chief was shown to the jury only once and was not unduly emphasized during the government's closing arguments. Exactly what happened here. I'd like to briefly turn to the Brady argument there. This is an unusual case because there was conflict counsel set up specifically so that the criminal prosecutors wouldn't have access to the civil AUSA's discovery. You know, there's not a lot of case on that. But the simplest path to affirmance here is to find that this wasn't exculpatory. It wasn't material. It wasn't prejudicial. It was. It was material and it could have been exculpatory. We could assume the contrary, but that would be a mistake. I think that's wrong, of these four emails, mostly about an accident, a different accident three years later with different signs would have done for him and it would have done for him very little. So he argued that it might have buttressed his defense expert testimony. I'd encourage you to compare what the defense traffic expert testified to to his amended declaration. Once he saw these emails, you'll see they're almost identical. This would have been an identical argument made to the jury. The only thing that's been added, you know, so in the lower court defense counsel said it could be, quote, used to explore a little bit further and make a little bit more headway in impeaching some of the government witnesses. The only thing added to that in appeal is this new argument that this 2017 crash under different conditions with different road signs would have somehow blown up the defendant's case. And this court has found time again that kind of speculative, cumulative, nearly impeaching information is not enough to qualify for the standards of Brady or to earn the defendant a retrial. The cases cited by defendant are distinguishable. Silva, Paradis, and Carragher all involve egregious prosecutorial misconduct and much more significant evidence. And for that reason, this court should affirm. Okay. Any other questions by my colleagues of the government? No, thank you. Very well. So the defense has a rebuttal time. Thank you very much, Your Honor. I want to begin, because I didn't get to talk about it earlier, with your old chief point. I think that on prejudice, the critical point that I want to emphasize is that this was a very close case. The first time the district judge said it was a close case. And so something that prejudicial could have tipped the balance. Second, on Brady, first of all, I don't see the relevance of conflict counsel. Conflict counsel is, I guess, designed to prevent privileged information from going from the civil division to the prosecutors. But it is not and cannot be a mechanism to absolve the government from its Brady obligations. In addition, what's your best case for that? I've never heard of conflict counsel before, Your Honor, in a Brady situation, and I've never seen such a case. So I'm not sure there is one. You're basically asking us to make new law. No, I'm not. The Jerrigan case. There's a line in the Jerrigan case that I quote in the opening brief where this court says you can't put stuff in a certain place in order to prevent your Brady obligation. Something to that effect. My understanding was that the military base's investigators had this information. So do we even have to get into the conflict counsel wrinkle? We do not, Your Honor. The Fort Irwin police had that information, and Michael Boltoff, the deputy director of emergency services, it says at ER 95, the FBI report on Mr. Issa. Issa said that Michael Boltoff told him about the second accident. So therefore, the emergency services had this information and the Fort Irwin police had this team. Then surely the Fort Irwin police and the emergency services department is, and that evidence is material. Let me ask you this, counsel. Did the prosecution know that the Fort Irwin police had this information at the time of your trial? It did not, Your Honor, but it had under this court's case law, starting with Price, a duty to, and Kiles versus Whitley, a duty to learn. It is responsible under Kiles for everything in the possession of the investigating agencies, and that includes emergency services and the Fort Irwin police department. Excuse me, go ahead. And the Issa emails provide evidence of this second accident, and therefore the fact that you're not taking judicial notice of the report doesn't make a difference because it's in the Issa email. I'm sorry, Judge Kelley. That's right. Did the defense request information with respect to other accidents at the same location? To my knowledge, Your Honor, the defense did not. I have no, but Your Honor, under the Amato case from 2014, there's no due diligence requirement under Brady in this circuit. Just good lawyering. I can't help that, Your Honor. I wasn't trial counsel. If there are any more questions, I'd be happy to... Other questions by my colleague? All right, we thank counsel for their arguments, both well done. We think we have your positions well in mind. The case of United States v. Kilty is submitted.
judges: Kelly, SMITH, FORREST